(No. 31898.—)

MARY MAY THREW *vs.* GLENN THREW *et al.,* Appellants.—
(JENNIE LOWE *et al.,* Appellees.)

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

HARDY, HARDY & HARDY, of Galesburg, for appellants.

JOSEPH V. TOOHILL, of Farmington, and NELSON & GUSTAFSON, and BURREL BARASH, both of Galesburg, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

Mary May Threw, widow of Albert Threw, deceased, filed a complaint for partition and other relief in the circuit court of Knox County. The suit primarily involves the validity and construction of an agreement entered into between the plaintiff, her husband, and one daughter,

Jennie E. Lowe, on December 21, 1940, as well as the construction and legal effect of the will of the husband, executed on January 1, 1936.

Albert Threw, the decedent, and Mary May Threw, his wife, were married February 22, 1894, and lived together as husband and wife until June 8, 1929, at which time they separated and lived apart until the death of the husband on August 25, 1947.

Albert Threw, at the time of his death, left a gross estate valued at about $240,000, and an estimated net estate of about $190,000, including real and personal property. He left surviving him Mary May Threw, his widow, and four children, Glenn Threw, Ralph Threw, Leslie Threw and Jennie E. Lowe, as his only heirs-at-law. On August 31, 1948, Mary May Threw, widow, renounced the will of her husband and the provisions therein for her benefit and elected to take her statutory share in the property owned by the decedent at the time of his death.

From the date the husband and wife ceased living together until the date of the separation agreement in 1940, the widow, Mary May Threw, had made her home with the daughter, Jennie E. Lowe, who was the third party to the disputed contract.

Under this agreement, the husband paid the sum of $41,000 to his daughter, Jennie E. Lowe, to be held by her in trust for the support of the wife during her lifetime, with the remainder, if any, at her death to the daughter. It was duly signed and acknowledged by the husband, the wife and the daughter. In her complaint, the widow alleged· that she was the owner of a one-third interest in all of the decedent's real estate and that her daughter was the owner of an undivided one-sixth interest in the intestate real estate. There was no mention in the complaint of the agreement dated December 21, 1940. The will of Albert Threw, dated January 1, 1936, gave his property to his three sons, Glenn, Ralph and Leslie Threw or to their

descendants, with the following exceptions, which are material to this case. By clause 6 the decedent devised certain real estate to his wife for life with remainder to his daughter, Jennie E. Lowe, the same to be in lieu of her widow's award and all other rights she might have in his estate. By clause 7 the testator devised certain real estate to his three sons in trust, with directions to sell the same six years after his death and divide the proceeds of such sale equally among his four children.

The testator's three sons, as individuals and two of them as trustees under the will, filed an answer setting forth that the widow had received the benefit and use of the trust fund provided for her in the agreement of December 21, 1940, and that by reason thereof, the widow and her daughter, Jennie E. Lowe, were barred and prevented from any interest in the lands described in the complaint. The answer further alleged in the alternative that if the agreement should be held illegal, the widow was estopped to question its validity by reason of having accepted the benefits thereof, and in the further alternative that she cannot question its validity until such time as she has returned the $41,000 to the executor of the estate. The exact alternative allegations follow with respect to the rights of the daughter, Jennie E. Lowe. The daughter filed an answer and counterclaim. In the answer she stated she was willing that the $41,000 received by her should be considered as a part of decedent's estate and applied on her share of the intestate property of her deceased father. In her counterclaim she denies the validity of the separation agreement but alleges that, regardless of its validity, by reason of the provisions of paragraph 9 of the agreement, reading, "provided, however, that if my father, Albert Threw, shall make any other or further provisions for me in his last will and testament that the same may be accepted by me," she can accept the terms of the will in her favor, and asks the court to decree that she is the

owner of a two-thirds interest in the land devised in clause 6 of the will and entitled to accept the provisions made for her in clause 7.

The cause was referred to a master in chancery whose findings and conclusions on the main questions at issue were in favor of the widow and the daughter, Jennie E. Lowe. He found specifically that the agreement dated December 21, 1940, between Albert Threw, Mary May Threw and Jennie E. Lowe, was void as to the widow because it was against the public policy of the State of Illinois and could not be enforced against her. He further found that an executed trust of the sum of $41,000 for the benefit of Mary May Threw had been established upon the execution of said agreement and, upon the payment of such amount to Jennie E. Lowe, as trustee, became an enforceable trust. Further, that all sums remaining on hand of the said sum of $41,000 at the time of the death of Mary May Threw should be regarded as the individual property of the daughter, Jennie E. Lowe; that the widow was entitled to a one-third interest and Jennie E. Lowe to an undivided two-thirds interest in certain real estate described in clause 6 of the will; also that Jennie E. Lowe was entitled to receive a one-fourth share of the rents and a like share in the proceeds of the sale of the real estate described in the seventh clause of the will; also that Jennie E. Lowe did not own any interest in other intestate real estate because she had released such interest under the agreement dated December 21, 1940, in consideration of the payment to her of the sum of $41,000. Aside from the provisions that all of the real estate was subject to the lien of any unpaid taxes, the rights of present tenants in possession, and indebtedness for the settlement of the estate, the master found, as to the balance of the real estate, that Mary May Threw, the widow, was the owner of an undivided one-third interest, and Glenn,

Ralph and Leslie Threw each the owner of a two-ninths interest therein. The master recommended that a decree of partition be entered accordingly.

The court overruled objections made to the master's report and entered a decree in conformity therewith. In prosecuting an appeal from the entry of such decree, the appellants present two separate grounds for reversal: First, that the agreement between Albert Threw and Mary May Threw, husband and wife, executed in December, 1940, was valid and enforceable as to the wife, Mary May Threw. It is argued that the fundamental purpose of such a contract was to fulfill and not to avoid the husband's obligation to support his wife, and that it was not intended to relieve the husband in any manner from the obligation to support his wife.

In support of this contention the appellants call attention to the following excerpts from the contract:

"And, Whereas, said party of the first part and said party of the second part have mutually agreed upon what is a reasonable provision for the support and maintenance of said party of the second part, past, present and for the remainder of her natural life;

"And, whereas, the parties hereto have agreed upon a reasonable and just disposal of all of the property of said party of the first part, free and discharged of any and all past, present and future claims, demands, charges, inchoate right of dower, dower estate, rights, interest, liens, administration as widow, or to the property rights of any kind whatsoever of the said party of the second part to the end that said party of the first part, his legal representatives, heirs and assigns, shall hold such property, except such property as by the terms of this indenture is conveyed or paid to said party of the second part or otherwise, as provided herein, to his sole and separate use and sole and separate use of his heirs, legal representatives and assigns:"

"2. Simultaneously with the signing of this agreement the party of the first part agrees to pay to the party of the second part the sum of Forty-one Thousand ($41,000.00) Dollars in legal tender of the United States of America, said money to be paid to Jennie E. Lowe, Trustee for the uses and purposes hereinafter set forth.

It is understood that said money is given to the party of the third part for the use and benefit and for the support and maintenance of the party of the second part for and during her natural lifetime, and the party of the second part agrees that such provision for her support and maintenance is acceptable and will in fact provide her with a support and maintenance befitting her station in life for and during her life, and that said consideration is accepted in full satisfaction and in lieu of her support and maintenance, by the party of the first part during her life."

Notwithstanding the construction placed upon the contract by appellants, we believe it is apparent, from the context of the entire agreement, that it was the intention of the parties to enter into a complete and final settlement between the husband and wife of all of their property rights, including the rights of the wife to support and maintenance from her husband. The following language used in stating the object of the contract, "free and discharged of any and all past, present and future claims, demands, charges, inchoate right of dower, dower estate, rights, interest, liens, administration as widow, or to the property rights of any kind whatsoever of the said party of the second part," coupled with the agreement that the couple should live separate and apart, does not in any manner indicate that the wife could, under all circumstances, look to the husband for further support and maintenance.

Contracts of this character have consistently been condemned by this court and have been held to be invalid as against public policy. In the recent case of *Lagow* v. *Snapp*, 400 Ill. 414, most of the cases cited in the briefs of both parties have been reviewed and similar contracts held invalid. In that opinion *Lyons* v. *Schanbacher*, 316 Ill. 569, and *VanKoten* v. *VanKoten*, 323 Ill. 323, were quite fully discussed, and *Berge* v. *Berge*, 366 Ill. 228, and *Vock* v. *Vock*, 365 Ill. 432, cited in support. A further analysis of those cases would be repetition here. We are of the opinion that the contract in question in this case

was aimed at relieving the husband from any further support and maintenance of the wife and was, therefore, contrary to public policy and void. The circuit court properly held that the widow was not precluded from asserting her claims against the property of her deceased husband.

On the second branch of this appeal, it is claimed that Jennie E. Lowe is not entitled to receive any beneficial interest under clauses 6 and 7 of decedent's will.

The circuit court held that the contract was severable as to Jennie E. Lowe and enforceable and binding as to her, and that she, therefore, was not entitled to share in the intestate estate, but held that she was entitled to the beneficial interest under clauses 6 and 7 of the will. It is the position of appellants that the agreement of December 21, 1940, constituted not only a contract or release of Jennie E. Lowe's interest in the estate, but that it also constituted an ademption by satisfaction of the provisions made in the will for her. Paragraph ten of the agreement reads:

"10. And, Whereas, in consideration of the sum of money hereinabove set forth and the mutual covenants herein contained and the irrevocable trust and disposal of said trust fund the party of the third part [Jennie E. Lowe] does hereby acknowledge to have received of her father, Albert Threw, party of the first part, the sum of Forty-one Thousand ($41,000.00) Dollars, which sum is paid to and received by her under the above agreement and the further understanding, that my father has advanced the same to me in full for my distributive share out of his estate, whatever the same may be at his decease. And for and in consideration of said sum to me so paid and received as aforesaid, I hereby agree that neither myself nor my heirs will take, claim or receive anything further out of the estate of the said Albert Threw at or after his decease, provided, however, that if my father Albert Threw shall make any other or further provisions for me in his last Will and Testament that the same can be accepted by me. This paper shall be a receipt in full in the hands of the Administrator, Executor, or legal representative of the estate of the said Albert Threw after his decease for all the right, share, and interest of the parties of the second and third part, and shall forever cut off any claim of heirship by their heirs forever."

Under clause 6 of the will, the testator devised a life estate to his wife with remainder to his daughter, Jennie E. Lowe, in certain lands, of which, at the time of his death, he owned one tract of 160 acres. All other lands mentioned in the clause had been conveyed prior to his decease.

As noted above, in clause 7 of his will the testator devised certain real estate to his three sons in trust, with directions to sell the same six years after his death and divide the rents and proceeds of sale equally among his four children.

It is insisted that the making of the agreement in 1940, and the payment of the $41,000 to Jennie E. Lowe, as trustee for her mother, with remainder to the daughter, was in full satisfaction of the daughter's rights in the estate, and that because of the signing of the agreement, the testator believed clauses 6 and 7 of the will to be revoked and rendered inoperative. It is urged that the provision of the contract, "provided, however, if my father, Albert Threw, shall make any other or further provision for me in his last Will and Testament that the same can be accepted by me," relates to the making of some new and future provision and could not reasonably be construed to include a provision made in the will for the daughter five years previously.

After the making of his will in 1936, the testator made many changes pertaining to his property. He was the owner of and acquired title to many tracts of valuable farm land. He conveyed substantial portions of his holdings to his sons and other persons after the drafting and execution of his will. He entered into the controversial agreement in 1940 with his wife and daughter, but at no time did he ever change, modify or revoke any of the terms of his will in any other manner. We do not find any evidence outside of the separation agreement indicating the testator wished to dispose of his property other than through the provisions of his will. We do not find

that by paragraph 10 of the agreement Jennie E. Lowe contracted to release her complete interest in the father's estate, nor do we consider that the payment to her under said clause of the contract constituted an ademption by satisfaction of the provisions of the will made for her. Neither do we find that the terms of the will made for the benefit of Jennie E. Lowe were impliedly revoked by the agreement.

The decree of the circuit court of Knox County is, therefore, affirmed.

*Decree affirmed.*